Good morning, and may it please the Court. My name is David Liu. I'm a California Deputy Attorney General, and I represent the appellant, the California Franchise Tax Board, in this case. As the Court is aware, the ultimate issue in this case is whether the California taxes that are owed by the debtor, in this case Brenda Jones, to the Franchise Tax Board for the tax year 2002 were accepted from the discharge that the debtor received in her Chapter 7 bankruptcy case. As the Court is aware, by statute, that is Section 507A8 of the Bankruptcy Code, a tax debt that is owed is accepted from discharge if the tax return was due within three years of the filing of the bankruptcy petition. That's what's known as the so-called three-year look-back period. Counsel, I hate to interrupt, but since you referred to that, and that was intended to codify, as I understand it, Young v. United States. But why should Young v. United States apply when in that case the Internal Revenue Service could not collect, whereas in this case the FTP could have collected the debt because it was a period of time when it revested, at least in part, in the debtor? Well, there's – it's a question of whether – we don't know whether or not the Franchise Tax Board could have collected. There are certainly cases that supported the view that the Franchise Tax Board could not have collected because there was property that remained in the bankruptcy estate even after confirmation of the bankruptcy plan. But not all the property, as I understand it. Isn't that correct? Well, there is one – there is one line, there is one approach that has been taken, that all of the property remains in the bankruptcy estate even after confirmation of the plan. In which case the Franchise Tax Board would not have been able to make any attempts to collect on that debt. But it seemed to me if you look at 362C1, in those cases they say you can't be sanctioned for collecting from the debtor after confirmation. And if there is – there still could be property coming into the estate, but you have property vested in the debtor. Why – if you're concerned that you might be in violation, isn't there a procedure where you could go in and essentially ask permission? Well, there is a procedure that would allow the Franchise Tax Board basically to seek relief from the estate. Well, but that's assuming that the stay is applicable. So what I heard your concern is you felt like somehow you would be in violation. In other words, if you were to take action, you're concerned that you're going to be in violation of the stay. Right. To the extent that the Franchise – To the extent that the stay even applies at that point. Well, to the extent that – we're talking about property that arguably remained in the estate following confirmation. Correct. And whether or not the Franchise Tax Board could have made any efforts to obtain that property following the confirmation of the plan. And there are cases – and there are cases that say that property remains in the estate and there are cases that say that property does not remain in the estate. And so the problem that the Franchise Tax Board had is whether – is not knowing whether or not it would be in violation of the stay that's made in the attempt to seek the property that arguably remained in the estate following the confirmation of the plan. And that's what – that is the dilemma that the Franchise Tax Board encountered in this particular case because there was no clear-cut answer to that question. The Franchise Tax Board basically decided to err on the side of caution by not doing anything. That seems like the opposite of caution to me. Because if you really thought there was a problem, you just said you could go in and ask for a lifting of the stay. That would certainly be one option. And then they may say, well, there's really no stay in effect. There's really no problem. There's no conflict here and you can collect it. So in a way, what you did – and I don't mean you. I mean the Franchise Tax Board. Thank you. Not you. But what the Franchise Tax Board did was sort of say, okay, we're going to – I don't know what went through their head exactly, but we're going to abdicate and we're not going to do anything. And it had a whole series of options that were available to it. So it seems we'd be hard-pressed to say that it would – it could not necessarily have collected during that time. Well, I guess the first response I would make is in response to that is there is the Weckl case, the Ninth Circuit case, which basically said that the Franchise Tax Board should not have the burden of attempting to test the stay or to seek relief from the stay in order to, you know, to see whether or not it was, in fact, in violation of the automatic stay. And I think that to put the actions or the inaction, I guess, of the Franchise Tax Board on it is inconsistent with what the court, the Ninth Circuit court, held in the Weckl case. I don't know exactly what the Franchise Tax Board was thinking, but I think that what they were thinking is that they felt that they did not want to take a chance of running afoul of the automatic stay by attempting to collect property which arguably remained in the estate following confirmation and therefore did not do anything. Anyway. What I hear Judge McKeown saying, if there are cases that go both ways, why wouldn't you go in to the bankruptcy court and try to attest the property and cite the cases that are in your favor? Well, I suppose it certainly could have. But it did not. And again, I don't know why it did not. I guess the real question is if you could have, why wouldn't that distinguish this case from Ex parte Young? I mean, Young v. United States. Right. Right. Thank you. I mean, it just seems to me that you have a situation where you have the confirmation in which the property then goes back to Jones, but then there is a continuation of the estate in this case. There's a continuous. Some of that money dribbling in. Right. Right. And one of the, I guess, four approaches that have been taken is that the monies that subsequent to the confirmation is, you know, is part of the estate. And if that's true, then the Franchise Tax Board would have been precluded from attempting to collect against that property or property which was needed for the continued administration of the estate post-confirmation. But what about the Jones, the property that reverted back? The property that reverted back would be? Outside the estate. Outside the estate would be property of the debtor, of Ms. Jones. That you could go after. Yes, that's correct. So why doesn't that answer the question? Because we're talking about any, we're talking about whether or not the Franchise Tax Board was precluded from seeking property that was in the estate. I understand. Okay. And so to the extent that there is property in the estate following confirmation, that is whether or not the question is whether or not the Franchise Tax Board could have attempted to collect against that property. But then does that leave the question of couldn't the Franchise Tax Board have collected against her personal property, the property that reverted to her? Following confirmation? Correct. Yes, it could have, I believe. And therefore, it wasn't precluded from collection. It was not precluded from collection against that property. Correct. But it was precluded against collection of, I mean, to the extent that there was property post-confirmation. But to the extent that there is property that is considered estate property, the Franchise Tax Board could not have collected against that property. But that's supposed to be a greeting, whether or not it's true that you could not have gone against the estate. But there was personal property that you could have gone against. Why aren't you precluded now? Well, we're not precluded, but the – I mean, to the extent that there is property in the estate, the Franchise Tax Board. Let's set the estate over here. Okay. Property reverts to her. You could have gone after that. Is that correct? I believe that's the case. If that's so, then how do you win now? I'm sorry, Judge Gelsen. I'm not quite sure. I know I'm not getting what you're getting at. As long as, you know, Young v. United States said the Internal Revenue Service was precluded from collecting. Right. During the time of the prior bankruptcy. Exactly. If we say that the Franchise Tax Board was not precluded from collecting against her, then why doesn't that distinguish this case? It was not precluded from collecting. Against her property. Against her property. That is not part of the estate. It could have. Yes, it could have. But I don't think that the Young case was, that that issue came up in the Young case. I mean, I think that the Young case basically stands for the proposition that to the extent that the taxing agency in the Young case was precluded from attempting to collect against property of the estate by virtue of the automatic stay, that the running of the three-year look-back period should be suspended during that time because the taxing agency did not have the full three years in which to protect its interest in collecting. Okay. Okay. I think that with regard to the various approaches that have been taken by the circuit courts, the Court is obviously familiar that there is a conflict among the circuits. And I would simply like to point out, as I have in my briefs, that to the extent that the Court agrees with the Franchise Tax Board's reading of the unnumbered provision of Section 50788, that it really does not need to kind of jump into this if the Court agrees with the interpretation that the running of the three-year look-back period is suspended as long as there is a stay in effect, and regardless of whether or not that stay applies to collection of the tax. And so that is one way that the Court can resolve this issue without having to make a determination as to which approach it deems to be the best. I don't think I have any more at this time to say. I'll be happy. I'd like to reserve my additional time if I may. Sure. Why don't you do that. Thank you. Good morning, Your Honors, and may it please the Court. Melanie Brown on behalf of the Klein Law Group for the debtor appellee Brenda Jones. The debtor's argument in this case is threefold. First, the stay suspension provision of Section 507 does not govern the tax liability at issue. Second, in the alternative, the three-year look-back period of Section 507 was not told by the automatic stay in the debtor's original Chapter 13 case, because pursuant to both Section 1327B and the revesting of the bankruptcy code and the revesting provisions of the debtor's plan, estate property ceased to exist upon confirmation. And finally, the Franchise Tax Board was not disabled from collecting on their 2002 tax set. My first argument, the unnumbered paragraph added at the end of Section 507aA does not suspend or toll the three-year look-back period for post-petition tax. This unnumbered paragraph begins an otherwise applicable time period specified in this paragraph. This makes it clear that it is the priority time period contained in Section 507aA that can be suspended. This leads to the conclusion that the tax share at issue falls within the three-year look-back period in the prior case, and the subject claim is for a priority tax. An income tax obligation for which the return is due post-petition does not meet the priority definition contained in Section 507aA. A post-petition tax is not capable or suitable to invoke priority status under this section and therefore cannot fall within an applicable time period as contemplated by the unnumbered paragraph. Mr. Brown, excuse me. I think the argument from the Franchise Tax Board dealt with whether there was property that reverted back to the debtor after the upon confirmation of the plan. If property remained in the debtor at that time, apparently the Franchise Tax Board could have at least gone in to seek a ruling from the court to permit it to go after the taxes. And if that is so, then the Franchise Tax Board would not be protected by the suspension provision. Do you agree with that? I agree with that. And is that your argument? That's one of our arguments. We do believe that there are four approaches to determining the 1306a and 1327b. And the approach that we've adopted, that the panel adopted and that the bankruptcy court judge adopted was the estate termination approach. And we believe that's the best approach to kind of balance this 1306a, 1327b problem. But you win on this other approach as well. I'm sorry? You would win on the approach I suggested. We would win on that approach. There's two – there's actually two theories that we could win. In that case that Judge Thompson is talking about, one wouldn't need to reconcile these four approaches and where we would come out. I'm sorry, what was that? We wouldn't need to reconcile all those approaches. And that's a simple way. I'd like to address – Start with the simple way first. Yes. Well, if property of a portion of the estate revested in the debtor, that means that there is property of the debtor that can be attached by a postpetition creditor, because the automatic stay prohibits, you know, the collection activities depending on where the creditor stands. And if the creditor is standing in the position as the Franchise Tax Board was as a postpetition creditor, they are only precluded from collecting against property of the bankruptcy estate, and that's 362a3 and 362a4. But if there is available property of the debtor, then they're not precluded from collecting on that. And so, therefore, the three-year look-back period would not be told. The concerns of Congress in enacting that, I think, were that there would be – that the creditor, that the government agency would be precluded by some intervening factors, such as a bankruptcy, from protecting its claim, and that, you know, when you're looking at the Young case, in fact, that's what happened, and the Court addressed that, that there was a loophole in the law which, you know, when you had a prepetition tax, a debtor could file a Chapter 13, make minimal payments, dismiss that after the time has run, dismiss that case and file a Chapter 7 and discharge the debt. And so I think that those concerns in Congress are not being triggered when there – when the franchise or when the government agency is not precluded from collecting. Let me ask you a question here. The Franchise Tax Board in the United States argue that because Congress specifically mentioned preclusion from tax collection in the first and third circumstances in the unnumbered paragraph following Section 507A.8, but failed to mention that qualification in the second circumstance, that second circumstance is broad and applies to dependency of any automatic stay during bankruptcy, regardless of whether a particular creditor may collect on a debt. What is your response? My response to that, I think I dealt with it in the briefs, was that, one, I think that's ignoring the language of the automatic stay, which is defined in 362. And I think that when Congress drafted this, they were aware that that definition was present and that they meant for that definition to supplement this particular section. And my other response to that is that, as the Franchise Tax Board has acknowledged, this was a codification of the Young case. And in the Young case, this was a prepetition tax claim where they really were precluded. There was no other option for them because they had to be bound by this plan. So they couldn't bring a relief from stay. They couldn't motion to dismiss the case for failure to pay postpetition taxes. All right. Thank you. Getting to the ‑‑ just to address the WECL case, sorry, in terms of whether or not they needed to seek relief from stay, my response to that is that that was a very fact‑specific case, and I believe it had to do with an involuntary filing by another party. And the issue there was whether or not general creditors have to test the legitimacy of a bankruptcy filing in order to protect their claims. And I don't think that that applies to this situation. Just to kind of supply what I think is one of the main reasons why the estate termination approach is the best way to go, even though, as we've talked about, it's not the only way we can win on this issue, is that I think it just definitely balances 1306B and A and 1306A, 1306B and 1327B. First, it gives the ‑‑ it really does acknowledge the choice that's given to debtors by 1327B. And that choice comes down to two things. One, they can, by expressly opting out of the vesting language, they can leave the automatic stay in place for the duration of the bankruptcy, and thereby give themselves protection against postpetition creditors collecting. Well ‑‑ Do we have any other circuit that's adopted this approach? There is no other circuit that I'm aware of. Okay. And then the other reason I think that it's good is that ‑‑ on the other side of that is that they can, without ‑‑ they can just allow the estate property to vest in themselves, and that opens up an ability for them to obtain postpetition credit, and try to reestablish themselves in that way. I think there's support for that when you look at the legislative history of 1227B, which is mentioned in a few cases, in Ray Anero and the Pertratelli case. And in that legislative history, Congress specifically stated that they were concerned with farmers being able to obtain credit after filing of a bankruptcy, and that they modeled 1227B specifically on 1327B to allow for that. I also ‑‑ other sections, 1362C1, which says that the stay of an act against property of the estate under subsection A of this section continues until such property is no longer property of the state. So that that's contemplating the fact that property of the state may cease to be property of the state before the closed dismissal or conversion of a case. And I also think that in bankruptcy, I'm not so sure that there is a tension between 1306A and 1327B. I think that in bankruptcy, oftentimes, you're looking forward. I mean, that's the whole point. When you're looking at a three‑to‑five‑year plan, which is what you're doing in Chapter 13. And 1306A says this is what, you know, property of the state is, and it's expansive. And 1327B acknowledges that expansive definition of what property of the estate is and invests that whole ‑‑ that whole definition in the debtor upon confirmation. So I don't know if the tension is as strong as it's been made out to be. Do you have no other questions? Thank you. Thank you, Your Honor. I believe I just have about 90 seconds left, so I'll make it short. I would disagree with a statement by opposing counsel that the Franchise Tax Board took the position that the unnumbered paragraph of Section 507A.8 is simply a complication of the Young v. U.S. decision. I believe that the unnumbered provision goes beyond what Young held in basically stating that any time in which there's a stay of a proceeding in a bankruptcy court case, that there should be a suspension of the running of the three‑year period. And I think that that's consistent with the arguments that we've made. First of all, the language of the statute, as just Judge Nelson pointed out, does not make any reference to a stay with regard to the collection of tax, at least with regard to that provision of the statute that is applicable to this case. And we believe that it's consistent with the legislative policy to try to make it difficult for debtors to avoid the payment of tax. And we also believe that it's consistent with Congress's desire to clearly define the party's rights at the time that Congress passed this unnumbered provision. It was assumed that it was aware of the various conflicts among the various circuits, and certainly the FTB's interpretation is a way for that conflict to be avoided. Thank you very much. Thank you. You've both served up a very interesting statutory question here. And I thank you for your arguments. The case of Jones and the Franchise Tax Board is submitted and we're adjourned for the morning. All rise.
judges: Nelson D. W., Thompson, McKeown